IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MUHLENBERG COLLEGE,

                Plaintiff,

    v.                                     CIVIL ACTION
                                              NO. 13-7197

SPORTSWEAR, INC.,
doing business as
PREP SPORTSWEAR,

                Defendant.

## MEMORANDUM

**SCHMEHL, J.**                                                          **February 18, 2015**

        Plaintiff Muhlenberg College filed suit against Defendant Sportswear, Inc., doing business as Prep Sportswear, alleging trademark infringement and associated claims. Defendant operates a website from which customers can purchase apparel with customized colors and text in a variety of styles. Plaintiff argues the website is obviously geared towards selling unlicensed college apparel because, among other things, it presents pages with suggested product designs using the colors, names, and possibly styles and logos of specific schools, including Muhlenberg College. Defendant insists that its business model is non-infringing because customers can make many design choices that may or may not result in apparel utilizing schools' intellectual property.

        After Defendant answered the complaint, Plaintiff moved to strike several affirmative defenses; the Court later granted one uncontested part of that motion but otherwise denied it as the same issues were already addressed by subsequent motions. Those motions are: Plaintiff's motion for summary judgment on all claims; Defendant's motion for partial summary judgment asking the Court to rule that Plaintiff's trademark

to the stand-alone word "MUHLENBERG" is not entitled to incontestable status; and Defendant's motion for leave to amend to add a counterclaim for cancellation of Plaintiff's registration of the word "MUHLENBERG" and cancellation of Plaintiff's exclusive rights to the "MUHLENBERG" word portion of its registration of "MUHLENBERG COLLEGE" with a particular design. Several settlement conferences before both the undersigned and Magistrate Judge Richard A. Lloret have proven unsuccessful, so the Court will now address the two motions filed by Defendant but leave Plaintiff's motion for summary judgment to be decided in a future opinion.

Defendant's Motion for Partial Summary Judgment Regarding Incontestability

A mark becomes "incontestable" when it has been registered and continually used for five years without an adverse decision and an affidavit to that effect is filed. *See* 15 U.S.C. § 1065. Such incontestability renders the mark's registration "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115. Incontestable status can be challenged only by statutorily provided defenses, including "[t]hat the registration or the incontestable right to use the mark was obtained fraudulently" and "[t]hat equitable principles, including laches, estoppel, and acquiescence, are applicable." *Id.* Defendant blurs its position somewhat but insists in its reply brief that it is pursuing an inequitable conduct/unclean hands argument rather than a fraud argument. Nevertheless, based on the enumerated statutory defenses and the issues raised by both sides, the Court will address both fraud and, under the equitable principles provision, unclean hands.

A party claiming fraud in obtaining trademark registration "bears a heavy burden of proof." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009). "Indeed, 'the very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence. There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party.'" *Id.* (quoting *Smith Int'l, Inc. v. Olin Corp.*, 209 U.S.P.Q. (BNA) 1033, 1044 (T.T.A.B. 1981)). To this high standard, a challenger must show a "false, material representation of fact in connection" with the application for registration. *Id.* (quoting *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 48 (Fed. Cir. 1986)). After thorough consideration, the *Bose* court concluded that the false, material representation must be made "with the intent to deceive the PTO." *Id.* at 1245; *see also U.S. Soo Bahk Do Moo Duk Kwan Fed'n, Inc. v. Int'l Tang Soo Do Moo Duk Kwan Ass'n*, No. 3:12·CV-00669, 2014 WL 5640979, at *4 (M.D. Pa. Nov. 4, 2014); *Alliance Bank v. New Century Bank*, 742 F. Supp. 2d 532, 550-51 (E.D. Pa. 2010). Negligence and even gross negligence are insufficient. *Bose*, 580 F.3d at 1244-45. "Subjective intent to deceive, however difficult it may be to prove, is an indispensable element in the analysis." *Id.* at 1245. Indirect evidence is satisfactory so long as it is clear and convincing. *Id.*

Defendant has not made the necessary showing here. Defendant contends that Plaintiff's Vice President for Finance and Treasurer Kent A. Dyer made a false, material misrepresentation with intent to deceive the PTO when he attested that the stand-alone word mark MUHLENBERG "has become distinctive as applied to the goods and services by reason of substantially exclusive and continuous use" and that he was "not aware that the mark MUHLENBERG has been used by any other party in the education field to

3

denote or describe any education services or related goods." In Defendant's view, these statements were obviously disingenuous because Dyer surely must have known, and in fact did know, that there are other municipalities, institutions, and even schools with "Muhlenberg" in their names, including a "Muhlenberg Elementary School" within a mile of Plaintiff's location. Plaintiff argues that the statements were accurate because they referred to *substantially* rather than absolutely exclusive use of MUHLENBERG; because they referred to the use of MUHLENBERG standing alone, and there is no evidence other entities use the name that way; and because the statements were made with reference to the particular type of goods and services Plaintiff provides, namely undergraduate education. It may be debatable whether Dyer was stretching the truth, and whether claiming that the mark is not used "by *any* other party in the *education field* to denote or describe *any educational* services or related goods" pushes the statement beyond the narrow undergraduate context. But debatably misleading words are certainly not clear and convincing evidence of subjective intent to deceive, and clearly not as a matter of law on summary judgment.

Defendant has not met the burden for fraud, but it implies that a different and perhaps lower standard for unclean hands gives it a viable defense. First, it is questionable whether the doctrine of unclean hands as it relates to misleading statements before the PTO should even be available under the statute's reference to equitable principles. The statute notes only laches, estoppel, and acquiescence (though it is admittedly not an enumerated, exhaustive list), and has a separate, express provision covering fraud. *See* 15 U.S.C. § 1115. If unclean hands indeed carries a lower standard, its inclusion would seem to undermine the fraud provision, and if it is not a lower

4

standard, it would be redundant and unhelpful to Defendant in any event. Either way, application of the doctrine is highly discretionary and courts do not have to invoke it. *See In re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir. 1999).

When courts do consider the doctrine, the analytical focus is usually on the connection between the alleged inequitable conduct and the issue before the court, *see id.*, but the question here is what conduct is sufficient to support application of the doctrine, particularly as compared to the fraud standard discussed above. There is less guidance on that aspect, but the cases generally speak of unconscionable or shocking acts, bad faith, deceit, or fraud itself. *See id.*; *Am. Freedom Def. Initiative v. Se. Pennysylvania Transp. Auth. (SEPTA)*, No. 14-5335, 2014 WL 6676517, at *5 (E.D. Pa. Nov. 25, 2014) (citing *Imprisoned Citizens Union v. Shapp*, 11 F.Supp.2d 586, 608 (E.D. Pa. 1998)); *Adkins v. Sogliuzzo*, No. 09-1123 SDW, 2014 WL 1343065, at *10 (D.N.J. Apr. 4, 2014) (citing *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 377 n. 7 (3d Cir. 1992) and *Gaudiosi v. Mellon*, 269 F.2d 873, 882 (3d Cir. 1959)).

In the patent context, courts consider "inequitable conduct" that may be "broader than common law fraud," *J.P. Stevens & Co. v. Lex Tex Ltd., Inc.*, 747 F.2d 1553, 1559 (Fed. Cir. 1984), and may include unclean hands, *see EMC Corp. v. Pure Storage, Inc.*, No. CV 13-1985(RGA), 2014 WL 5795557, at *1 (D. Del. Nov. 5, 2014). The *J.P. Stevens* holding has been drawn back somewhat, however, and inequitable conduct in the patent context does require an intent to deceive. *See Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 872 (Fed. Cir. 1988). Gross negligence by itself is insufficient: "the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding

5

of intent to deceive." *Id.* at 876. The *Kingsdown* decision was cited in *Bose*, increasing the patent cases' relevance here. *See also Alliance Bank*, 742 F. Supp. 2d at 550-51 (considering inequitable conduct in tandem with fraud and the making of intentional false statements); *TruePosition Inc. v. Andrew Corp.*, 568 F. Supp. 2d 500, 518-19 (D. Del. 2008) (finding that the court could not consider unclean hands post-trial because the doctrine would be inconsistent with other jury findings indicating that defendant had not shown intent to mislead) (subsequent history on unrelated issues). *But see Saudi Basic Indus. Corp. v. ExxonMobil Corp.*, 401 F. Supp. 2d 383, 396 (D.N.J. 2005) (holding that recklessness or blatant disregard without actual intent may be sufficient to invoke unclean hands if the behavior is nonetheless unconscionable and shocks the integrity of the court).

There is at most a very slight difference between fraud and unclean hands with respect to defending against an incontestable mark on the basis of allegedly misleading statements. For the same reasons this Court was unable to find fraud in this case as a matter of law, it does not identify any conduct that conclusively shocks its conscience in such a way as to vitiate the incontestability of the mark on the basis of unclean hands.

Defendant's Motion for Leave to Add a Counterclaim

Defendant has filed a separate motion to add a counterclaim actually seeking to cancel the registration of the mark discussed above, plus another mark, on the same general basis (misleading the PTO). Though the subject matter is similar, the standard is obviously different. If a party requests leave to amend a pleading, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the

part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). *See also Lutz v. Philips Electronics N. Am. Corp.*, 347 F. App'x 773, 777 (3d Cir. 2009) ("Although leave to amend a complaint under Rule 15(a) should be liberally granted, we have held that such leave should not be permitted where an amendment to the complaint would be futile.").

      Plaintiff's argument that the amendment sought here is untimely and prejudicial is mainly based on the fact that the motion to amend was filed after Plaintiff's Motion for Summary Judgment. Given the liberality of the amendment standard, the Court will not deny leave to amend on that basis in this case. Plaintiff's motion for summary judgment was filed almost unusually early—more than two months before the motions deadline, shortly before a scheduled conference with the Court, and even before the discovery deadline. Much was still happening with the posture of the case at that point, and the Court finds no undue delay.

      Plaintiff also argues the amendment would be futile, largely because Defendant lacks standing to bring the cancellation claim. The root of standing here is the statute, which provides that suit may be filed "by any person who believes that he is or will be damaged . . . by the registration of a mark." 15 U.S.C. § 1064. Reasoning that "the public interest is served . . . in broadly interpreting the class of persons Congress intended to be allowed to institute cancellation proceedings," courts have held that a cancellation claimant has standing if it shows a "real interest" or "real commercial interest." *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1028-30 (C.C.P.A. 1982).

> This "real interest" requirement stems from a policy of preventing "mere intermeddlers" who do not raise a real controversy from bringing oppositions or cancellation proceedings in the PTO. Pursuant to the "real interest" requirement, to have standing an opposer to a registration is required to have a legitimate personal interest in the opposition. In other words, the opposer must have a direct and personal stake in the outcome of the opposition.

*Ritchie v. Simpson*, 170 F.3d 1092, 1095 (Fed. Cir. 1999) (internal citations omitted).[1]

One interpretation of "real interest" seems to require the cancellation claimant to demonstrate it has an actual interest of its own—as in some type of ownership interest or claim of right—in the disputed mark itself. *See Shonac Corp. v. AMKO Int'l, Inc.*, 763 F. Supp. 919, 931 (S.D. Ohio 1991). But that interpretation seems erroneous. A challenging party must also be allowed to claim not that the mark belongs to it, but simply that the mark belongs to no one, and thus that the challenging party should not be prevented from using the mark by the mark's nominal owner.[2] Indeed, the "widely diverse interests" noted in *Lipton*, 670 F.2d at 1029, include a cancellation claimant's assertion that the mark at issue contained a term that both parties to the case, and anyone else, should be permitted to use because it was merely descriptive, *Golomb v. Wadsworth*, 592 F.2d 1184, 201 USPQ 200 (CCPA), *cert. denied*, 444 U.S. 833 (1979).

The holding of *International Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087 (Fed. Cir. 1984), is also in keeping with this broader, more sensible interpretation of the real interest requirement. In that case, a young women's fraternal organization had a logo and licensed certain jewelers to sell merchandise featuring the

---

[1] Standing also requires a reasonable belief of damage, *see Ritchie*, 170 F.3d at 1095, but that aspect is not really at issue here.

[2] Imagine Heinz fraudulently attempting to register the word "ketchup" (holding aside for the sake of discussion any other reasons that would not work). Hunt's must have the necessary interest for standing to challenge that registration, even though Hunt's could not claim that it has any right of its own to registration or exclusive use of the word "ketchup."

8

logo. *Id.* at 1089. The organization sued another jeweler selling products with the logo without permission, and that jeweler subsequently sued to cancel the fraternal organization's later-acquired registration of the logo, claiming the logo had been widely used and thus did not serve to indicate that merchandise originated with the organization. *Id.* The appellate court found that the unlicensed jeweler had "clearly demonstrated a 'real interest' in [the] cancellation proceeding" because it claimed a right to produce jewelry using the mark (incidentally supported by a decision in the jeweler's favor in another proceeding) and the registration by the fraternal organization was "inconsistent with that right." *Id.* at 1092. The jeweler did not claim it had any proprietary rights of its own to the mark, only that it ought to be allowed to continue using the logo because the organization's exclusive right was invalid. *See also Mears v. Montgomery*, No. 02 CIV. 0407BSJMHD, 2004 WL 964093, at *14-16 (S.D.N.Y. May 5, 2004) (noting the "liberal standing requirements embodied in more recent case law" and finding standing even though the cancellation claimant's right to use the mark in question was not superior to the registrant's because the statutes "authorize a plaintiff to seek to cancel a mark registration even when the plaintiff lacks a registered mark but the defendant possesses one"); *Marshak v. Reed*, No. 96 CV 2292NGMLO, 2001 WL 799571, at *2 (E.D.N.Y. July 11, 2001) ("[a] competitor has the requisite standing provided that it can 'show more than a vague or general desire' to use a name or mark that conflicts with another party's trademark right" (quoting *Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 596 (2d Cir. 1996))), *vacated on other grounds*, 34 F. App'x 8 (2d Cir. 2002).

      Whatever else the concept of "interest" might comprise, it cannot sensibly mean that a *valid* claim to use the marks is a prerequisite for the purposes of standing. Both

Plaintiff's and Defendant's arguments wrongly seem to inject consideration of the merits of the proposed counterclaim into the discussion of standing: Plaintiff says Defendant is a mere intermeddler without an interest in the marks because it is an infringer or counterfeiter, while Defendant says it does have an interest because Plaintiff's marks are invalid and Defendant thus has a right to use them. Those arguments might be relevant for a general futility analysis, but the merit of a claim is an unsuitable consideration in terms of evaluating whether a party has proper initial standing to bring the claim.

If the ultimate resolution of the claim is a cancellation of the marks, Defendant may be able to legitimately continue selling apparel using the marks, or will at least have an easier remaining path to such a result. The question of whether Defendant will be able to go on selling the merchandise at issue gives it a real commercial interest in cancellation of Plaintiff's marks. This interest is not a vague desire or theoretical interest; rather, Defendant has an already-existing business operation selling apparel that Plaintiff claims infringes on its trademarks. Therefore, Defendant clearly has the necessary interest for standing to bring the cancellation claim.

Though the merits are not properly included in the initial standing analysis, the counterclaim might nevertheless be prohibited on the basis of futility more generally if it obviously lacks merit. But while the Court concluded above that Defendant has fallen short of establishing fraud and unclean hands in the fashion necessary for a grant of summary judgment, the allegations and evidence offered are certainly sufficient for leave to add the counterclaim. The fact that Plaintiff's Vice President's statements were only *arguably* wrong prevents summary judgment, but it counsels in favor of amendment

because the mere possibility that the statements constituted fraud in obtaining the mark registrations is sufficient for leave to amend.

Conclusion

Defendant certainly has the requisite interest to establish standing to seek cancellation of the mark registrations. The allegations of fraud, unclean hands, or inequitable conduct relating to the exclusivity attestations supporting the registrations are plausible but somewhat inconclusive; therefore, the Court will permit Defendant to amend and add a counterclaim for cancellation or modification of the registrations at issue, but will on the other hand deny Defendant's motion for partial summary judgment as to the incontestability of the first mark. Plaintiff's motion for summary judgment on its primary claims will remain outstanding for the time being.